976 A.2d 1012

**Joseph Ernest SIMMS**

v.

**STATE of Maryland.**

**No. 97, Sept. Term, 2008.**

Court of Appeals of Maryland.

July 24, 2009.

Geraldine K. Sweeney, Chief Attorney (Nancy S. Forster, Public Defender), on brief, for Appellant.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

This case presents us with another opportunity to consider and apply Maryland's Postconviction DNA statute, enacted in 2001 and codified at Maryland Code (2001, 2008 Repl. Vol.), § 8–201 of the Criminal Procedure Article.[1] Appellant, Joseph Earnest Simms, was convicted in 1998 of two counts of first degree murder. In 2008, he filed a *pro se* petition for DNA testing of certain evidence that the State collected during its investigation of the crimes, and he requested a hearing on the petition. The Circuit Court subsequently issued an order denying the petition, without a hearing.

Appellant, now represented by the Public Defender's Office, noted an appeal to this Court, seeking reversal of the Circuit Court's order and a remand to that court for a hearing on the petition.[2] For the reasons that follow, we hold that the court erred in summarily denying the petition. We therefore vacate the order of the Circuit Court and remand the matter to that court for further proceedings consistent with this opinion.

I.

On April 6, 1998, a jury sitting in the Circuit Court for Baltimore City convicted Appellant of the first degree premeditated murder of Peter Wendell Williams and Belinda M. Baylor. For those convictions, Appellant is presently serving two consecutive terms of life imprisonment without the possibility of parole.

Appellant noted a timely appeal. The Court of Special Appeals affirmed the judgments in an unreported opinion, *Simms v. State*, 126 Md.App. 721 (1999). Appellant later filed

---

1. Unless otherwise indicated, all subsequent statutory references are to § 8–201, as amended in 2003.

2. The denial of a petition under § 8–201 is subject to direct appeal to this Court. *See* § 8–201(j)(6).

a postconviction petition, which the Circuit Court denied on June 26, 2001. The Court of Special Appeals denied Appellant's application for leave to appeal the denial of postconviction relief. Appellant then filed a motion to reopen the postconviction proceeding. That motion, too, was denied.

On January 7, 2008, Appellant, representing himself, filed a "Motion for New Trial and Release of Evidence for DNA Testing," with a supporting memorandum and attachment (collectively, "the petition"). The petition invokes § 8–201 and seeks DNA testing of certain material collected by the police during the murder investigation.[3] The petition contains a certificate of service indicating that Appellant mailed a copy of the petition to the Office of the State's Attorney for Baltimore City. The State did not file a response to the petition.

Appellant alleges in the petition that he has "maintained from the time of his arrest in this case that he had no involvement in the murders of the decease (sic) and his defense at trial consisted of a complete denial of criminal agencies." He further alleges that the State's case at trial "consisted entirely [of] circumstantial evidence regarding his relationship [of] discord with Belinda M. Baynor and the selective DNA testing of clothing the assailant allegedly wor[e] when the murders were committed."

Appellant also alleges in the petition that the police collected "massive amounts" of evidence from the crime scene and additional evidence from a trash bag the police found outside a house located several doors away from where Appellant was staying at the time. The trash bag contained bloody clothes.[4]

---

3. Section 8–201(b) states that the procedure provided by the statute is available to persons convicted of the following crimes: first and second degree murder, manslaughter, rape in the first and second degrees, and sexual offense in the first and second degrees. Appellant, as a person convicted of first degree murder, has standing to file the petition.

4. Although Appellant does not use the term "bloody" to describe the clothing found in the trash bag, the officer who authored the Application for Statement of Charges used that word to describe the clothing.

Appellant alleges that the police selected items for DNA testing from those two sources of evidence, choosing "a cutting from a jacket, shoes, belt, socks, towel, sanitary napkins"; the police also took blood samples from him and the murder victims.

Appellant alleges that the items selected were first tested using a restriction fragment length polymorphism ("RFLP") test but, because the results were "inconclusive," the items were sent for polymerase chain reaction ("PCR") testing. Appellant alleges that the results of the PCR test "concluded" that neither he nor Peter Williams, one of the two murder victims, was "a possible source of the DNA from the jacket cutting, shoes, pants and belt"; however, Belinda Baynor, the other murder victim, "could not be excluded as the source."

Appellant argues that "STR [Short Tandem Repeats] DNA testing of the physical evidence in this case has the potential to detect the presence of other DNA on the items tested and those not tested from the crime scene." He further argues: "In addition this type of DNA testing is far more sensitive and discriminating than the RFLP and PCR testing that was preformed (sic) on the selected tested items."

Noting that he has a degenerative skin disease on both of his legs, and supporting that information with a medical report, Appellant alleges: "The socks and other items tested would have shown skin cells, or other fabers(sic) associated with the Defendant if the items tested were from the Defendant." Moreover, "STR DNA testing of the materials collect[ed] at the crime scene would support Defendant's contention of innocence and that someone other than the defendant murdered the decease[d]." The petition includes a request for a hearing on the motion, the appointment of counsel,[5] and a

---

The Application for Statement of Charges, unlike the trial transcript and the unreported opinion of the Court of Special Appeals on direct appeal, is in the record before us and evidently was before the Circuit Court when it considered the petition.

5. "There is no right to appointed counsel under § 8–201, either statutory or constitutional, to assist a person in filing a petition under the

court order requiring the Baltimore City Police Department to release the evidence to be tested.

The Circuit Court did not hold a hearing on the petition nor, insofar as we can discern from the record, did the court require the State to answer it. On February 20, 2008, the court issued an order summarily denying the petition.

On March 11, 2008, Appellant, at that time still representing himself, noted an appeal to the Court of Special Appeals. On October 2, 2008, the Court of Special Appeals issued an order transferring the notice of appeal to this Court. *See* § 8–201(j)(6); Md. Rule 8–132.

Appellant, now represented by the Office of the Public Defender, poses a single question for review: "Did the trial court err in denying the motion for release of evidence for DNA testing without a hearing, without making any factual findings, and without any stated reason?"

## II.

Section 8–201 entitles persons convicted of certain serious crimes to pursue DNA testing of physical evidence that is in the possession of the State and might produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing. *Arey v. State*, 400 Md. 491, 507, 929 A.2d 501, 510 (2007) (identifying the purpose under-girding the General Assembly's enactment of § 8–201); *see also Thompson v. State*, 395 Md. 240, 252, 909 A.2d 1035, 1042 (2006) (stating that "the primary purposes behind the enact-ment of § 8–201" is "to facilitate the establishment of claims of actual innocence for serious crimes"). The statute has under-gone a number of amendments since its enactment in 2001, and because we have discussed its legislative history on sever-

---

statute or during the initial stages of the proceedings." *Arey v. State*, 400 Md. 491, 507, 929 A.2d 501, 510 (2007) (citing § 8–201(h)(2)). A court nevertheless "has the inherent power to appoint counsel at any stage of proceedings under § 8–201." *Id.* at 508, 929 A.2d at 511. Consequently, the court may "appoint counsel to represent a petitioner when the court believes counsel would be necessary to further the interest of justice." *Id.* at 509, 929 A.2d at 511.

al occasions, we do not repeat that discussion here. *See Gregg v. State,* 409 Md. 698, 708–12, 976 A.2d 999, 1004–07 (2009); *Blake v. State,* 395 Md. 213, 218–26, 909 A.2d 1020, 1023–27 (2006); *Thompson,* 395 Md. at 252–53, 909 A.2d at 1042–43.

Several subsections of § 8–201 are pertinent to the issues raised in this appeal. Section 8–201(b) provides that a petitioner who meets the threshold requirements of conviction of a qualifying crime, *see supra* note 3, "may file a petition for DNA testing of scientific identification evidence that the State possesses as provided in subsection (i) of this section and that is related to the judgment of conviction[.]" "Scientific identification evidence" is defined in § 8–201(a)(5) as evidence that:

(i) is related to an investigation or prosecution that resulted in a judgment of conviction;

(ii) is in the actual or constructive possession of a law enforcement agency or agent of a law enforcement agency; and

(iii) contains biological evidence from which DNA may be recovered that may produce exculpatory or mitigating evidence relevant to a claim of a convicted person of wrongful conviction or sentencing if subject to DNA testing.

Section 8–201(a)(2), in turn, defines "biological evidence" as evidence that "includes, but is not limited to, any blood, hair, saliva, semen, epithelial cells, buccal cells, or other bodily substances from which genetic marker groupings may be obtained."

Section (c) of § 8–201, upon which the parties focus much of their attention in this appeal, reads: [6]

Subject to subsection (d) [7] of this section, a court shall order DNA testing if the court finds that:

---

**6.** The General Assembly amended § 8–201 in 2008. *See* Chapter 337 of the Acts of 2008. Those amendments made no change to the wording of what was subsection (c), but other changes to the statute prompted its re-lettering as subsection (d).

**7.** Section 8–201(d), states in pertinent part: "(1) A petitioner shall notify the State in writing of the filing of a petition under this section."

(1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and

(2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

## III.

Appellant challenges the court's summary denial of the petition. Evidently referring to *Blake, supra,* he points out that the court ruled "without a hearing, without factual findings, and without any stated reason or reasons why it was denied." *See Blake,* 395 Md. at 227, 909 A.2d at 1028 (observing that "[t]he court should make some findings of fact and should set forth the underlying reasons when it dismisses a petition for testing"). Appellant assumes, reasonably so, that the court denied the petition on the grounds that it failed to meet the requirements of § 8–201(c), and he argues that the petition in fact satisfies both requirements of that subsection.

With regard to the requirement of § 8–201(c)(1), Appellant argues that the petition alleges sufficient facts to show that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing." He highlights three factual allegations in the petition: first, the subsequent PCR testing excluded him and one of the two murder victims (but not the other victim), as the source of the blood on the clothing; second, the State's theory at trial was that the bloody clothing was worn by the assailant at the time of the murders; and, third, the State connected him to the crime through "circumstantial evidence" regarding his relationship with [the female murder victim, Ms. Baynor]. With regard to the requirement of § 8–201(c)(2), Appellant argues that the requested STR testing "i[s] more sensitive and discriminating than the RFLP and the PCR testing that was performed in 1998" and, therefore, the STR testing would have the potential to "detect the presence of other DNA on

the items tested and those not tested from the crime scene." Appellant emphasizes that the State did not respond to the petition and therefore his assertions are "uncontradicted." He argues that he was entitled, at the least, to the hearing he requested before the court ruled on the petition.

The State responds that the Circuit Court was correct to deny the petition without a hearing. The State argues: "[T]he statute does not give a right to a hearing, and where— as here—the petition fails to even make a prima facie case for relief, no hearing is necessary." The State adds that, even had a hearing been scheduled, the petition lacked the necessary factual specificity to permit the State to respond in opposition. The State contends that a petition must include sufficient facts to "enable the court and the State to determine what biological evidence is sought, what test the petitioner wishes to have performed, what would constitute a 'favorable' outcome of the test, and why this outcome would give rise to a substantial probability of a different verdict in his case." Applying those criteria, the State argues that the petition is lacking in almost every area.

■ The State asserts, in particular, that the petition fails both to "offer some specificity as to what items the petitioner wishes to test" and to identify the "biological evidence" he wishes to test; Appellant's request is outside the purview of the DNA statute. Then, assuming the premise that the petition must allege how the DNA testing will lead to a "favorable result" by creating a "reasonable probability of a different outcome at Appellant's trial," the State argues that the petition fails to make such a showing.[8]

---

8. The State supports that argument, in part, with references to the trial transcript. Because the transcript is not in the record before us, the State requests that we take judicial notice of it. An appellate court's decision to take judicial notice of certain adjudicative facts is discretionary. *See Dashiell v. Meeks,* 396 Md. 149, 176, 913 A.2d 10, 25 (2006) (holding that, pursuant to Maryland Rule 5–201(c), "there is no mandatory requirement for this Court or the Court of Special Appeals to take judicial notice of any such adjudicative fact, but both courts, if they choose to do so, *may* take judicial notice of adjudicative facts.")

## IV.

Section § 8–201(c) states that the Court "shall order DNA testing," if the court finds that the petition satisfies the requirements of § 8–201(c)(1) and (2). A court therefore has no discretion to deny the petition summarily, if the petition makes out a *prima facie* case of entitlement to the testing sought. *See Gregg,* 409 Md. at 721, 976 A.2d at 1012. Therefore, we must decide whether the court in the present case acted properly when it denied the petition, by determining, whether the petition makes out a *prima facie* case of Appellant's entitlement to the testing he seeks. We hold that it does.

We begin by recognizing that we are dealing here with a petition filed by an unrepresented inmate. It is the practice of the federal courts to construe liberally court filings that are prepared by *pro se* prisoners. *See Hughes v. Rowe,* 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 176 n. 7, 66 L.Ed.2d 163, 170 n. 7 (1980) (stating, in a case involving an unrepresented inmate, that civil complaints prepared by *pro se* litigants are held to " 'less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976)) (per curiam); *accord Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081, 1086 (2007) (stating, in a case involving an unrepresented inmate, that "[a] document filed *pro se* is 'to be liberally construed,' [ ] and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292, 50 L.Ed.2d at 261).[9] It is

(emphasis in original). We shall exercise our discretion to deny the State's request to take judicial notice of the transcript, and we will confine our assessment of the parties' arguments by referring only to the materials that were before the Circuit Court when it summarily denied the petition.

9. The notion that the contents of an unrepresented criminal inmate's pleading should be liberally construed does not conflict with the proposition that unrepresented litigants are expected to follow the rules of

appropriate to give Appellant the benefit of a liberal construction of the petition, particularly in light of the salutary purpose of the postconviction DNA statute, the dearth of case law until today's filing of *Gregg, supra*, concerning what a petition must contain in order to satisfy the strictures of § 8–201(c), and the lack, so far, of rules of procedure to guide the process. *See Arey*, 400 Md. at 506, 506 n. 11, 929 A.2d at 510, 510 n. 11 (commenting about the lack of rules of procedure relating to § 8–201 petitions).

We conclude that, given a liberal construction, the petition easily meets the pleading requirements of § 8–201(c) so as to survive summary denial. Preliminarily, Appellant alleges that he stood convicted of the first degree murder of Belinda Baynor and Peter Williams, thereby establishing his standing to file the petition, under § 8–201(b). And, the petition shows that he mailed the petition to the Office of the State's Attorney for Baltimore City, satisfying the requirement of § 8–201(d). Indeed, in neither regard does the State argue the contrary.

Further, the petition makes a *prima facie* case, under § 8–201(c)(1) and (2), for Appellant's entitlement to at least some of the DNA testing he seeks. We begin by rejecting the State's contention that the petition fails to allege with sufficient specificity the items Appellant wants tested and the biological evidence he seeks to have subjected to DNA testing. As we shall see, the allegations in the petition make sufficiently plain that Appellant seeks, at the least, to have the items found in the trash bag—the jacket, shoes, pants, belt and socks—retested using the STR method.[10] The petition also

procedure. *See, e.g., Grandison v. State*, 341 Md. 175, 195, 670 A.2d 398, 408 (1995) (noting that "we have long held that a defendant in a criminal case who chooses to represent himself is subject to the same rules regarding reviewability and waiver of questions not raised at trial as one who is represented by counsel"), *cert. denied*, 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996).

10. We agree with the State that the petition does not allege with sufficient specificity what items among the "massive" evidence collected at the crime scene (as opposed to the items in the trash bag) he seeks

plainly alleges that there are "skin cells" (hereafter, "epithelial cells") to be found on the items that Appellant seeks to have tested.

Moreover, the petition alleges sufficient facts to demonstrate, pursuant to § 8–201(c)(1), that a reasonable probability exists that STR DNA testing of the epithelial cells on the clothing has the scientific potential to produce exculpatory or mitigating evidence relevant to Appellant's claim of wrongful conviction.[11] Specifically, the petition alleges that the police collected bloody clothing from a bag that was found near a house where Appellant was staying at the time of the murders. The petition also alleges that the State's theory at trial was that the assailant had been wearing the bloody clothing when the murders were committed. And, the petition alleges that, if the socks and other items of bloody clothing found in the bag had been worn by him, then the more sophisticated STR DNA testing of the epithelial cells would disclose that fact. In short, Appellant alleges, albeit somewhat inartfully, that testing of the epithelial cells will establish that someone else, not he, was wearing the clothing at the time of the murders and therefore is the killer.

The petition also satisfies the requirement of § 8–201(c)(2) that the method of DNA testing Appellant wants performed is "generally accepted within the relevant scientific community." The petition specifically alleges that the biological evidence will be subjected to STR DNA testing. Such

---

to have tested. Appellant has the right, on remand, to ask for leave to amend the petition to include sufficiently specific allegations concerning what he wishes to have tested for DNA and why such testing would satisfy the requirements of the statute.

11. The State is incorrect in asserting that a person requesting DNA testing must prove, at the petition stage of the proceedings, that the testing will produce a "favorable result" by creating a "reasonable probability of a different outcome at Appellant's trial." This is not the standard by which eligibility for DNA testing is measured under the statute. See § 8–201(c)(1); Gregg, 409 Md. at 720, 976 A.2d at 1011–12.

testing is generally accepted in the relevant scientific community,[12] and the State does not contend otherwise.

In sum, we hold that Appellant presents in the *pro se* petition a *prima facie* case for STR DNA testing of the clothing found in the trash bag. The Circuit Court erred in summarily denying the petition, and we vacate the order denying it, accordingly.

That Appellant's petition has survived the preliminary test of *prima facie* sufficiency does not mean, however, that the court, at this early juncture in the proceedings, should grant him the relief sought in the petition. We noted at the outset of this opinion that the State has not answered the petition. We shall remand the case to the Circuit Court with the direction that it order the State to answer the petition, presenting any arguments why the court should not grant it. Appellant, who the Public Defender has agreed to represent if this case is remanded for further proceedings, may respond to the State's answer. Should any disputes arise from the parties' submissions that are material to the disposition of the petition, then the court must hold a hearing to resolve the disputes and make any necessary findings of fact, before ruling on the petition. *See Arey,* 400 Md. at 507, 929 A.2d at 510; *Blake,* 395 Md. at 227 n. 11, 909 A.2d at 1028 n. 11.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH**

---

12. STR testing is considered "the most widely used testing in the field of molecular biology," and "it is the most commonly used DNA testing in the criminal justice system." Catherine Arcabascio, *Chimeras: Double the DNA–Double the Fun for Crime Scene Investigators, Prosecutors, and Defense Attorneys?,* 40 Akron L.Rev. 435, 449 (2007) (citing to *U.S. Dep't Just., Off. of Just. Programs, Nat'l Inst. of Just., Post–Conviction DNA Testing: Recommendations for Handling Requests* 27 (1999)). "Indeed, short tandem repeat (STR) 'DNA tests can, in certain circumstances, establish to a virtual certainty whether a given individual did or did not commit a particular crime.'" *District Attorney's Office for the Third Judicial Dist. v. Osborne,* —— U.S. ——, 129 S.Ct. 2308, 174 L.Ed.2d 38, No. 08–6, 2009 U.S. LEXIS 4536, at *48 (June 18, 2009) (Alito, J., concurring). (quoting *Harvey v. Horan,* 285 F.3d 298, 305 (4th Cir.2002) (Luttig, J., respecting denial of rehearing en banc)).

THIS OPINION.   COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.