David E. Fuster v. State of Maryland, No. 41, September Term, 2013

**MARYLAND RULE 4-707(b) – COUNSEL FOR PURPOSES OF PETITION UNDER MD. CODE ANN., CRIM PROC. § 8-201 – STANDARD FOR RULING ON PETITION UNDER MD. CODE ANN., CRIM PROC. § 8-201 – PRESERVATION FOR APPELLATE REVIEW –** Court of Appeals held that: (I.A) Rule 4-707(b) does not entitle indigent petitioner to counsel for purposes of petition under Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2013 Supp.) ("CP") § 8-201; (I.B) trial court did not abuse its discretion in not considering whether to appoint counsel for Appellant for purposes of petition under CP § 8-201; (II) trial court used correct standard in ruling on petition under CP § 8-201; and (III) Appellant failed to preserve for appellate review issue of whether trial court clearly erred in concluding that State conducted reasonable search for victim's socks and shoes.

Circuit Court for Montgomery County
Criminal No. 94184

Argued: March 6, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2013
_____

DAVID E. FUSTER

v.

STATE OF MARYLAND
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Watts, J.
_____

Filed:  April 22, 2014

We decide: (I.A) whether Maryland Rule 4-707(b) entitles an indigent petitioner to appointed counsel for purposes of a petition under Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2013 Supp.) ("CP") § 8-201; (I.B) whether the Circuit Court for Montgomery County ("the circuit court") abused its discretion in not considering whether to appoint counsel for David E. Fuster ("Fuster"), Appellant, for purposes of a petition under CP § 8-201; (II) whether the circuit court erred in applying an incorrect standard in ruling on the petition under CP § 8-201; and (III) whether Fuster preserved for appellate review the issue of whether the circuit court clearly erred in concluding that the State, Appellee, conducted a reasonable search of collected evidence for the victim's socks and shoes.

We hold that: (I.A) Rule 4-707(b) does not entitle an indigent petitioner to appointed counsel for purposes of a petition under CP § 8-201; (I.B) the circuit court did not abuse its discretion in not considering whether to appoint counsel for Fuster for purposes of the petition under CP § 8-201; (II) the circuit court used the correct standard in ruling on the petition under CP § 8-201; and (III) Fuster failed to preserve for appellate review the issue of whether the circuit court clearly erred in concluding that the State conducted a reasonable search for the victim's socks and shoes.

## BACKGROUND

### A. Trial and Direct Appeal

The State charged Fuster, a dentist, with various sexual crimes against a minor patient. In the circuit court, a jury tried Fuster.

At trial, as a witness for the State, W.K.[1] testified as follows.  On October 10, 2001 (when W.K. was fifteen-years-old), W.K. visited Fuster's dental office.  Fuster administered gas to W.K. and placed his hand on W.K.'s thigh.  W.K. lost consciousness. When W.K. awoke, Fuster was "massaging" her inner thigh.  W.K. lost consciousness again.  Sometime after W.K. awoke again, her pants were unzipped, and Fuster was rubbing her vagina with his hand.  W.K. lost consciousness again.  Sometime after W.K. awoke again, Fuster "grabbed [W.K.,] put [W.K.] on top of him," and said: "Don't worry, I'm using a condom[.]"  Sometime afterward, Fuster was naked, W.K.'s "shirt was halfway up[,] and [her] bra was undone."

At trial, as a witness for the State, Donna Seelye ("Nurse Seelye"), a "sexual assault forensic nurse examiner[,]" testified that on October 10, 2001, she examined W.K., placing "each piece of clothing . . . in a separate  bag" and "check[ing W.K.] from head to toe[.]"

The jury convicted Fuster of second-degree rape, child abuse, third-degree sexual offense, and second-degree assault. Fuster appealed, and the Court of Special Appeals affirmed.  Fuster petitioned for a writ of *certiorari*, which this Court denied. See Fuster v. State, 412 Md. 256, 987 A.2d 16 (2010).

**B. Petition**

On November 3, 2010, in the circuit court, while self-represented, Fuster filed a "Petition for DNA Testing - Post Conviction Review" ("the Petition").  In the Petition,

---

[1]To protect her privacy, we refer to W.K. by her initials.

Fuster stated:

> [Fuster] request[s] that the underpants . . . [that W.K.] wore [on] the day [that] she was allegedly raped[] be tested using PCR (STR) "touch DNA" or "contact DNA" analysis. (Test for [Fuster's] epithelial cells)[.]
>
> [Fuster] request[s] that the leg cuffs of the jeans worn by [W.K.] . . . be tested using touch DNA or contact DNA analysis for [Fuster']s epithelial cells.
>
> [Fuster] request[s] that the socks and shoes worn by [W.K.] . . . be analyzed for [Fuster's] epithelial cells using PCR[ ](STR) touch DNA analysis.

In the answer to the Petition, the State responded:

> [W.K.]'s jeans and underpants [] are in the custody of the Montgomery County Police Department, Central Supply Section-Evidence Property Unit [("the Property Unit")]. . . . Officer William Bickle [("Officer Bickle")], the Supervisor of the Property Unit, has advised undersigned counsel that a check of the file documentation and storage container location relative to the evidence in the Fuster matter "do[es] not indicate the presence of any shoes or socks." Officer [] Bickle has further advised undersigned counsel that [he] checked with Sergeant Dan Clemen[]s [("Sergeant Clemens")], the investigating officer for the Fuster matter, to determine if shoes or socks were seized at the hospital. According to Officer Bickle, Sergeant Clemens "has no recall that these items were ever taken[,] and if they were, he would have packaged them separately and listed them on the chain of custody documentation. . . ."

On September 18, 2012, the circuit court conducted a hearing on the Petition. At the hearing, the following exchanges occurred:

> THE COURT: . . . Mr. Fuster, you are representing yourself?
>
> [] FUSTER: Yes, Your Honor.
>
> [PROSECUTOR]: Your Honor, there's no right to representation under the --
>
> THE COURT: I know, . . . but he can certainly get private counsel if he so desires.

- 3 -

\* \* \*

[] FUSTER: [Nurse Seelye testified that] she collected all of [W.K.'s] clothing. That she stripped [W.K.] from head to toe[.]

\* \* \*

THE COURT: That doesn't mean that [Nurse Seelye] collected [W.K.'s] socks or shoes.

[] FUSTER: I agree with you, Your Honor.

\* \* \*

[PROSECUTOR]: . . . I will look for [W.K.'s] socks and shoes. I will conduct the type of investigation that the Court of Appeals would require us to conduct, and I'm going to ask for this hearing to be reset[.]

On March 14, 2013, the circuit court resumed the hearing on the Petition. During the hearing, the following exchanges occurred:

THE COURT: . . . I can't order the DNA testing unless . . . two conditions [are] met.

\* \* \*

THE COURT: [T]hat there's a reasonable probability that if we go forward with DNA testing, [and] that there will be a potential for that test to produce exculpatory or mitigating evidence.

\* \* \*

[PROSECUTOR]: [T]he [S]tate never collected [W.K.'s] socks or shoes[.]

\* \* \*

[] FUSTER: [The State] ha[s] to not only show that [the State] do[es]n't have it in their possession, but why [the State] do[es]n't have it in their possession, and if there was willful or malicious destruction or loss of evidence. . . . I plan to show that[ the State] do[es]n't have it. I plan to show that it was malicious.

- 4 -

[PROSECUTOR]: [The State] do[es]n't have it. [The State] never collected it. It was never collected.

[] FUSTER: Well, it was supposed to be collected . . . . I'll have evidence to show that it wasn't collected -- it was collected -- uncollected or not collected maliciously and willfully.

* * *

[PROSECUTOR]: I have the collecting officer here who was with [W.K.] at the hospital, and who collected evidence there . . . . [H]e will testify that [W.K.'s] socks and shoes were not collected.

* * *

[PROSECUTOR]: . . . Mr. Fuster . . . you're not entitled to a lawyer in the context of a [p]etition for [p]ost[-c]onviction DNA testing, but if you have issues related to trial, or your attorney, you should be talking to the Office of the Public Defender if you qualify for their representation.

* * *

THE COURT: [I]f you have concerns about other issues, you definitely should consult with an attorney. And certainly, you might be eligible to be represented by the Office of the Public Defender.

[] FUSTER: Uh-huh.

THE COURT: Or you should try to get a private attorney. And I think I had told you even before for this case that it would be difficult for you to proceed without an attorney.

* * *

[PROSECUTOR]: [T]he time to challenge the reliability of the [S]tate's evidence was at trial. If you have a problem with the way that was done, you should be talking to an attorney about what possibilities you have with regard to pursuing post[-]conviction relief.

* * *

[PROSECUTOR]: [T]he [General Assembly] has decided that . . . you are not as a matter of right entitled to -- I mean, you can have an attorney for

this proceeding.  You have to hire one.

THE COURT: When you say for this proceeding, you're referring to this particular --

[PROSECUTOR]: To the post[-]conviction DNA.

THE COURT: Yes.

[PROSECUTOR]: An indigent is not allowed to --

THE COURT: Right.

[PROSECUTOR]: -- are not entitled to --

THE COURT: But there are other --

[PROSECUTOR]: -- there are -- right.

THE COURT: -- cases or other ways where you might -- and I think we already discussed that. . . . [Y]ou could be eligible to be represented by a public defender.

\* \* \*

THE COURT: I would really concur with what the [prosecutor] has been telling you. . . . [I]f you have some of these issues, you might want to consult with an attorney[.]

\* \* \*

[] FUSTER: [A] petitioner may move for a new trial . . . o[n] the grounds that [the] con[v]i[c]tion was based on unreliable. [sic]

\* \* \*

THE COURT: [W]hat this court would have to . . . find to order DNA testing is that there's a reasonable probability that exists that the DNA testing that would be done has the scientific potential to produce exculpatory or mitigating evidence that would be relevant to a claim that you're making --

[] FUSTER: Okay.

THE COURT: -- that you were wrongfully convicted.

* * *

THE COURT: [A] petitioner may move for a new trial on the grounds that the conviction was based on unreliable[] scientific identification.

[] FUSTER: And [Y]our [H]onor --

THE COURT: And that a substantial possibility exists that you would not have been convicted without the evidence.

* * *

[PROSECUTOR]: I'm going to ask the court to . . . find that [Fuster] has not made out a case for post[-]conviction DNA testing.

THE COURT: I would have to agree . . . . And . . . what [Fuster] has put forward in no way would lead me to conclude that there's a substantial possibility that he would not have been convicted without the evidence . . . . [Y]ou really need to speak to an attorney and to see if some of these other issues that you're raising could be raised in other petitions[.]

(Paragraph break omitted).

Fuster appealed the circuit court's denial of the Petition. On its own initiative, the Court of Special Appeals transferred the appeal to this Court.[2]

---

[2]Pursuant to CP § 8-201(k)(6), a litigant has a direct right of appeal to this Court in cases involving postconviction petitions for DNA testing and preservation of scientific identification evidence. CP § 8-201(k)(6) ("An appeal to the court of appeals may be taken from an order entered under this section."). See also Arrington v. State, 411 Md. 524, 544, 983 A.2d 1071, 1083 (2009) ("[W]e conclude that the right of appeal granted in CP Section 8-201(k)(6) is a direct right of appeal to this Court, which does not require a litigant to petition for *certiorari*.").

## DISCUSSION

## I.

## A.

Fuster contends that, under Rule 4-707(b), he was entitled to appointed counsel at the hearing on the Petition. Fuster argues that, by agreeing with the prosecutor's statements that he was not entitled to counsel at the hearing on the Petition, the circuit court violated his right to appointment of counsel.

The State responds that Rule 4-707(b) does not entitle an indigent petitioner to counsel for purposes of a petition under CP § 8-201.

An appellate court reviews without deference a trial court's interpretation of a Maryland Rule. See State v. Taylor, 431 Md. 615, 630, 66 A.3d 698, 707 (2013) ("This Court's interpretation of the Maryland Rules is a question of law; as such, we review a trial court's determinations on matters of interpretation without deference." (Citation and internal quotation marks omitted)).

A court interprets a Maryland Rule by using the same canons of construction that the court uses to interpret a statute. See Hoile v. State, 404 Md. 591, 608, 948 A.2d 30, 40, cert. denied, 555 U.S. 884 (2008) ("To interpret rules of procedure, we use the same canons and principles of construction used to interpret statutes." (Citation and internal quotation marks omitted)). First, the court considers the Rule's plain language in light of: (1) "the [] scheme to which [the Rule] belongs"; (2) "the purpose, aim, or policy of [this Court] in [adopt]ing the" Rule; and (3) the "presum[ption] that [this Court] intends [the Rules and this Court's precedent] to operate together as a consistent and harmonious

body of law[.]" <u>Lowery v. State</u>, 430 Md. 477, 496, 61 A.3d 794, 806 (2013) (citation omitted). If the Rule's plain language "is unambiguous and clearly consistent with the [Rule]'s apparent purpose," the court applies the Rule's plain language. <u>State v. Weems</u>, 429 Md. 329, 337, 55 A.3d 921, 926 (2012) (citation omitted). Generally, if the Rule's plain language is ambiguous or not clearly consistent with the Rule's apparent purpose, the court "search[es] for [rulemaking] intent in other indicia, including the history of the [Rule] or other relevant sources intrinsic and extrinsic to the [rulemaking] process[,]" in light of: (1) "the structure of the" Rule; (2) "how [the Rule] relates to other laws"; (3) the Rule's "general purpose"; and (4) "the relative rationality and legal effect of various competing constructions." <u>State v. Johnson</u>, 415 Md. 413, 422, 2 A.3d 368, 373 (2010) (citation omitted).

As to a petition under CP § 8-201, Rule 4-707(b)[3] states:

> If the court finds that a petitioner who has requested the appointment of counsel is indigent, the court **shall appoint counsel within 30 days after the State has filed its answer** unless (1) the court denies the petition as a matter of law or (2) counsel has already filed an appearance to represent the petitioner.

(Emphasis added).

This Court adopted Rule 4-707(b) on September 10, 2009, approximately a month and a half after this Court issued <u>Simms v. State</u>, 409 Md. 722, 976 A.2d 1012 (2009). In <u>Simms</u>, <u>id.</u> at 726 n.5, 976 A.2d at 1015 n.5, this Court stated:

"There is no right to appointed counsel under [CP] § 8-201, either statutory

---

[3]"The Rules in this Chapter apply to proceedings filed under [CP] § 8-201." Md. R. 4-701.

or constitutional, to assist a person in filing a petition under the statute or during the initial stages of the proceedings." *Arey v. State*, 400 Md. 491, 507, 929 A.2d 501, 510 (2007) (citing [CP] § 8-201(h)(2)). A [trial] court nevertheless "has the inherent power to appoint counsel at any stage of proceedings under [CP] § 8-201." *Id.* at 508, 929 A.2d at 511. Consequently, [a trial] court may "appoint counsel to represent a petitioner when the [trial] court believes [that] counsel would be necessary to further the interest of justice." *Id.* at 509, 929 A.2d at 51[2].

It is apparent from a committee note accompanying a related Rule that this Court's purpose in adopting Rule 4-707(b) was to implement Simms, 409 Md. at 726 n.5, 976 A.2d at 1015 n.5 (and, by extension, Arey, 400 Md. at 509, 929 A.2d at 512). Specifically, in the committee note of Rule 4-704(a),[4] the Standing Committee on Rules of Practice and Procedure ("the Rules Committee") stated:

> A petition filed by an unrepresented petitioner may be lacking in some of the details required by subsections (a)(2) and (3) of this Rule. To justify an order requiring DNA testing or a search of law enforcement databases or logs, however, those details must be provided at some point. **That may be achieved by the appointment of counsel under Rule 4-707** and an appropriate amendment to the petition. **See *Simms v. State*, ___ Md. ___ (No. 97, September Term 2008, filed July 24, 2009).**

(Emphasis added)). Based on this Court's purpose in adopting Rule 4-707(b), we conclude that Rule 4-707(b) does not entitle an indigent petitioner to counsel for purposes of a petition under CP § 8-201.

We acknowledge that Rule 4-707(b)'s plain language is not "clearly consistent with [Rule 4-707(b)]'s apparent purpose[.]" Weems, 429 Md. at 337, 55 A.3d at 926 (citation omitted). Namely, Rule 4-707(b) states:

---

[4]Rule 4-704(a) identifies requirements as to the content of a petition under CP § 8-201.

> If the court finds that a petitioner who has requested the appointment of counsel is indigent, the court **shall** appoint counsel within 30 days after the State has filed its answer unless (1) the court denies the petition as a matter of law or (2) counsel has already filed an appearance to represent the petitioner.

(Emphasis added). In other words, pursuant to Rule 4-707(b)'s plain language, under certain circumstances, a trial court **must** appoint counsel for an indigent petitioner for purposes of a petition under CP § 8-201. See Perez v. State, 420 Md. 57, 63, 21 A.3d 1048, 1052 (2011) ("[T]he word 'shall' indicates the intent that a provision is mandatory." (Citation omitted)). But, as the committee note of Rule 4-704(a) demonstrates, in adopting Rule 4-707(b), this Court was motivated as a response to Simms, 409 Md. 722, 976 A.2d 1012. Indeed, the timing of Rule 4-707(b)'s adoption and the reliance on Simms indicate that this Court's purpose in adopting Rule 4-707(b) was to implement Simms, 409 Md. at 726 n.5, 976 A.2d at 1015 n.5, and Arey, 400 Md. at 509, 929 A.2d at 512, which mandate that the appointment of counsel for purposes of a petition under CP § 8-201 is **discretionary**. See Simms, 409 Md. at 726 n.5, 976 A.2d at 1015 n.5 (A trial "court **may** 'appoint counsel to represent a petitioner when the [trial] court believes [that] counsel would be necessary to further the interest of justice.'" (Quoting Arey, 400 Md. at 509, 929 A.2d at 512) (emphasis added).

Because Rule 4-707(b)'s plain language is not clearly consistent with Rule 4-707(b)'s apparent purpose, we "search[] for [rulemaking] intent in other indicia[.]" Johnson, 415 Md. at 422, 2 A.3d at 373 (citation omitted). According to the minutes of the Rules Committee's May 15, 2009, meeting: (1) the Rules Committee considered what

was known at the time as Rule 4-708(d),[5] which stated: "If the court holds a hearing, it **shall** appoint counsel for the petitioner unless counsel has already entered an appearance or the petitioner has waived counsel" (emphasis added); (2) the Rules Committee decided to draft a new Rule 4-707 that would pertain to the appointment of counsel; and (3) one member of the Rules Committee stated that the new Rule 4-707 would "provide that the court **may** appoint counsel **in its discretion**[.]" (Emphasis added). But, at the Rules Committee's next meeting (on June 19, 2009), the Rules Committee considered what was known at the time as Rule 4-707(b), which used the word "shall" instead of the word "may." The minutes of the Rules Committee's June 19, 2009, meeting do not indicate any discussion of Rule 4-707(b)'s use of the word "shall" instead of the word "may." On June 19, 2009, the Rules Committee approved Rule 4-707(b), which appears in its current form in the Rules Committee's One Hundred Sixty-Second Report, and contains no substantive discussion of Rule 4-707(b). On September 9, 2009, this Court held an open meeting on the Rules Committee's One Hundred Sixty-Second Report. This Court adopted Rule 4-707(b) as written.[6]

---

[5]The substance of what was known at the time as Rule 4-708 (entitled "Hearing") was later adopted by this Court as current Rule 4-709 (entitled "Hearing; Procedure if No Hearing").

[6]Although the open meeting was recorded via audio cassette tapes, the audio cassette tapes are currently blank, *i.e.*, thus, no record of this Court's open meeting of September 9, 2009, is available. Nonetheless, we can discern that it is unlikely that, at the open meeting, there was any substantive discussion of Rule 4-707(b)'s use of the word "shall" instead of the word "may" as the Rules Committee's One Hundred Sixty-Second Report was submitted to this Court by the Rules Committee prior to the open meeting, and the Report contains no substantive discussion of Rule 4-707(b). And, as noted above, this Court adopted Rule 4-707(b) as written.

The Rules Committee's only discussion of Rule 4-707(b) indicates that the Rules Committee intended that, under Rule 4-707(b), a trial court would have the "**discretion**" to appoint counsel for an indigent petitioner for purposes of a petition under CP § 8-201. (Emphasis added). In light of Rule 4-707(b)'s history and this Court's holdings in Simms and Arey, the logical conclusion is that, despite Rule 4-707(b)'s use of the word "shall[,]" Rule 4-707(b) does not entitle an indigent petitioner to counsel for purposes of a petition under CP § 8-201; instead, a trial "court may 'appoint counsel to represent a petitioner when the [trial] court believes [that] counsel would be necessary to further the interest of justice.'" Simms, 409 Md. at 726 n.5, 976 A.2d at 1015 n.5 (quoting Arey, 400 Md. at 509, 929 A.2d at 512) (emphasis added).

This result ensures that Rule 4-707(b) and this Court's precedent "operate together as a consistent and harmonious body of law[.]" Lowery, 430 Md. at 496, 61 A.3d at 806 (citation omitted). As noted above, under Simms, 409 Md. at 726 n.5, 976 A.2d at 1015 n.5, and Arey, 400 Md. at 509, 929 A.2d at 512, a trial court has the discretion to appoint counsel for an indigent petitioner for purposes of a petition under CP § 8-201 "when the [trial] court believes [that] counsel would be necessary to further the interest of justice." This Court has never stated that there is any circumstance under which a trial court **must**, or shall, appoint counsel for an indigent petitioner for purposes of a petition under CP § 8-201. For the above reasons, Rule 4-707(b) does not entitle generally an indigent

petitioner to counsel for purposes of a petition under CP § 8-201.[7]

## B.

Fuster contends that the circuit court abused its discretion in not determining whether to exercise the discretion to appoint counsel for him for purposes of the Petition.

The State responds that the circuit court did not abuse its discretion in not considering whether to appoint counsel for Fuster for purposes of the Petition, as Fuster did not request counsel in the Petition.

An appellate court reviews for abuse of discretion a trial court's decision as to whether to appoint counsel for an indigent petitioner for purposes of a petition under CP § 8-201. See Simms, 409 Md. at 726 n.5, 976 A.2d at 1015 n.5 (A trial "court **may** 'appoint counsel to represent a petitioner when the [trial] court believes [that] counsel would be necessary to further the interest of justice.'" (Quoting Arey, 400 Md. at 509, 929 A.2d at 512) (emphasis added)).

Rule 4-707(b) states: "If the court finds that a petitioner who has requested the appointment of counsel is indigent, the court shall appoint counsel within 30 days after the State has filed its answer[.]" As discussed above in Part I.A, despite Rule 4-707(b)'s use of the word "shall[,]" Rule 4-707(b) does not entitle an indigent petitioner to counsel for purposes of a petition under CP § 8-201; instead, the appointment of counsel for purposes of a petition under CP § 8-201 is discretionary.

---

[7]Given the apparent dichotomy between Rule 4-707(b)'s plain language, the rulemaking history, and this Court's precedent, we refer the issue of revision of Rule 4-707(b) to the Rules Committee.

- 14 -

Here, we conclude that the circuit court did not abuse its discretion in not choosing whether to exercise the discretion to appoint counsel for Fuster for purposes of the Petition. In the Petition, Fuster did not request appointment of counsel. A trial court does not abuse its discretion in not choosing whether to exercise the discretion to appoint counsel for a petitioner for purposes of a petition under CP § 8-201 where the petitioner does not request the appointment of counsel in the petition. See Md. R. 4-707(b) (By stating that a trial "court shall appoint counsel" for "a petitioner who has requested the appointment of counsel . . . within 30 days after the State has filed its answer[,]" Rule 4-707(b) contemplates that the petitioner will have requested appointment of counsel in the petition under CP § 8-201. (Emphasis added)). For the above reasons, the circuit court did not abuse its discretion in not considering whether to appoint counsel for Fuster for purposes of the Petition.

## II.

Fuster contends that the circuit court erred in applying an incorrect standard in ruling on the Petition. Specifically, Fuster argues that the circuit court applied CP § 8-201(c)'s "substantial possibility" standard instead of CP § 8-201(d)(1)(i)'s "reasonable probability" standard, as the circuit court stated: "[W]hat [Fuster] has put forward in no way would lead me to conclude that there's a substantial possibility that he would not have been convicted without the evidence[.]"

The State responds that the circuit court used the correct standard in ruling on the Petition. We agree.

An appellate court reviews without deference the legal standard that a trial court

- 15 -

uses in ruling on a petition. See generally Tribbitt v. State, 403 Md. 638, 644, 943 A.2d 1260, 1263 (2008) ("[W]e review de novo the trial court's relation of . . . facts to the applicable law." (Citations and internal quotation marks omitted)).

"[A] court shall order DNA testing if the court finds that[] a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing[.]" CP § 8-201(d)(1)(i). "A petitioner may move for a new trial under this section on the grounds that the conviction was based on unreliable scientific identification evidence and a substantial possibility exists that the petitioner would not have been convicted without the evidence." CP § 8-201(c).

Here, we conclude that the circuit court used the correct standard in ruling on the Petition. In the Petition, Fuster requested testing of W.K.'s underpants, jeans' cuffs, socks, and shoes. On two occasions during the hearing on the Petition, the circuit court correctly stated that, under CP § 8-201(d)(1)(i), it would order DNA testing if it found that "a reasonable probability" existed that DNA testing had the scientific potential to produce exculpatory or mitigating evidence. During the hearing, Fuster requested a new trial on the ground that the convictions were based on unreliable scientific identification evidence. The circuit court correctly stated that, under CP § 8-201(c), it would order a new trial if it found that "a substantial possibility" existed that Fuster would not have been convicted without unreliable scientific identification evidence. Thus, the record establishes that the circuit court was well aware of where to use CP § 8-201(c)'s "substantial possibility" standard and where to use CP § 8-201(d)(1)(i)'s "reasonable

- 16 -

probability" standard.

We reject Fuster's contention that the circuit court's statement (*i.e.*, "[W]hat [Fuster] has put forward in no way would lead me to conclude that there's a substantial possibility that he would not have been convicted without the evidence") establishes that the circuit court used an incorrect standard in ruling on the Petition. Because Fuster requested two forms of relief (*i.e.*, testing and a new trial), the circuit court made two rulings: (1) the circuit court agreed with the State that Fuster was not entitled to testing; and (2) the circuit court denied the request for a new trial, determining that there was not a substantial possibility that Fuster would not have been convicted without the allegedly unreliable scientific identification evidence. The latter ruling was comprised of the circuit court's statement, which correctly referred to CP § 8-201(c)'s "substantial possibility" standard. For the above reasons, the circuit court used the correct standard in ruling on the Petition.

**III.**

Fuster contends that the circuit court clearly erred in concluding that the State conducted a reasonable search for W.K.'s socks and shoes. Specifically, Fuster argues that, absent an affidavit or testimony, the State's proffer (*i.e.*, that "the collecting officer . . . w[ould] testify that [W.K.'s] socks and shoes were not collected") did not suffice to prove that the State conducted a reasonable search for W.K.'s socks and shoes.

The State responds that, by failing to dispute the State's proffer, Fuster failed to preserve for appellate review the issue of whether the circuit court clearly erred in concluding that the State conducted a reasonable search for W.K.'s socks and shoes.

- 17 -

This Court reviews for clear error a trial court's conclusion as to whether the State conducted a reasonable search for a piece of evidence that is the subject of a petition under CP § 8-201. See Washington v. State, 424 Md. 632, 651, 37 A.3d 932, 943 (2012) ("[T]he 'clearly erroneous' standard of review is applicable to the Circuit Court's finding that [a] search ... was a reasonable search under [CP] § 8-201[.]" (Ellipsis and second alteration in original) (citation and internal quotation marks omitted)).

Here, we conclude that Fuster failed to preserve for appellate review the issue of whether the circuit court clearly erred in concluding that the State conducted a reasonable search for W.K.'s socks and shoes. The only evidence that even remotely suggests that the State collected W.K.'s socks and shoes was Nurse Seelye's trial testimony that she examined W.K., placing "each piece of clothing . . . in a separate bag" and "check[ing W.K.] from head to toe[.]" Nothing in Nurse Seelye's trial testimony indicates that W.K.'s socks and shoes were among the clothing that Nurse Seelye collected. At the hearing on the Petition, the State proffered that the "collecting officer" would testify that the State had never collected W.K.'s socks and shoes. Fuster failed to object to the State's proffer, and thus failed to preserve for appellate review any issue as to the State's search for W.K.'s socks and shoes. Indeed, Fuster not only failed to dispute the State's proffer, but also, on multiple occasions, before and after the proffer, conceded that the State had never collected W.K.'s socks and shoes.[8] In so conceding, Fuster invited the

_____

[8]Specifically: (1) after the circuit court stated that Nurse Seelye's statement (*i.e.*, that Nurse Seelye "check[ed W.K.] from head to toe") "doesn't mean that [Nurse Seelye] collected [W.K.'s] socks or shoes[,]" Fuster stated: "I agree with you, Your Honor"; (2) (Continued...)

circuit court to conclude that any search (whether reasonable or not) for W.K.'s socks and shoes would be fruitless. A party fails to preserve for appellate review any issue as to a trial court's ruling by inviting the trial court's ruling. See State v. Rich, 415 Md. 567, 581, 3 A.3d 1210, 1218 (2010) ("[W]hen [the defendant]'s trial counsel [] argued that the issue of voluntary manslaughter was generated by the evidence . . . that action constituted an intentional waiver of the right to argue on appeal that the evidence was insufficient to support the voluntary manslaughter conviction."). For the above reasons, Fuster failed to preserve for appellate review the issue of whether the circuit court clearly erred in concluding that the State conducted a reasonable search for W.K.'s socks and shoes.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

---

Fuster stated "I plan to show that[ the State] do[es]n't have it. I plan to show that it was malicious" destruction of evidence; and (3) after the prosecutor stated: "[The State] do[es]n't have it. [The State] never collected it. It was never collected[,]" Fuster stated: "Well, it was supposed to be collected . . . . I'll have evidence to show that it wasn't collected[.]"