*Joseph E. Simms v. State of Maryland*
No. 78, September Term 2014

**Criminal Procedure – Post-Conviction DNA Testing Statute – Withdrawal of Appointed Counsel.** Counsel appointed for an indigent petitioner in connection with a proceeding under the post-conviction DNA testing statute may seek to withdraw his or her appearance. Such a motion is best considered under the rule governing withdrawal of an attorney's appearance in a civil case (Maryland Rule 2-132) rather than the rule governing withdrawal of defense counsel in a criminal case (Maryland Rule 4-214(d)). In this case, the Circuit Court acted within its discretion under Rule 2-132 when it granted the motion. Maryland Code, Criminal Procedure Article, §8-201; Maryland Rule 2-132.

**Criminal Procedure – Post-Conviction DNA Testing Statute – Appointment of Counsel.** A circuit court has discretion under Maryland Rule 4-707(b), as construed in *Fuster v. State*, 437 Md. 653, 89 A.3d 1114 (2014), to appoint counsel for an indigent petitioner in a proceeding under the post-conviction DNA testing statute. In this case, the Circuit Court did not abuse its discretion when it declined to appoint new counsel for a petitioner who already had the benefit of appointed counsel in seeking the testing of evidence that was later determined to have been destroyed. Maryland Code, Criminal Procedure Article, §8-201; Maryland Rule 4-707(b).

**Criminal Procedure – Post-Conviction DNA Testing Statute – Reasonable Probability Determination.** In light of the documentation produced by the State that the evidence that the petitioner sought to test had been destroyed long ago, the Circuit Court was not clearly erroneous when it determined that there was no reasonable probability that a search of a database or further proceedings under the post-conviction DNA testing statute would produce exculpatory or mitigating evidence for the petitioner. Maryland Code, Criminal Procedure Article, §8-201.

Circuit Court for Baltimore City
Case No.: 196029012,13
Argued: September 9, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 78
September Term, 2014

---

JOSEPH E. SIMMS

v.

STATE OF MARYLAND

---

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.,
(Retired, Specially
Assigned),

JJ.

---

Opinion by McDonald, J.

---

Filed: November 23, 2015

In this case, both sides have sought to prove a negative. The Appellant, Joseph E. Simms, was convicted of first degree murder and related offenses in 1996. In 2008, well after his conviction had become final, he embarked on an effort under the post-conviction DNA testing statute, Maryland Code, Criminal Procedure Article ("CP"), §8-201, to prove that one item of the prosecution's evidence – socks he had allegedly worn at the time of the murders – lacked his DNA. The State ultimately responded with documentation that the socks no longer existed, having been destroyed long ago, along with other items seized in the case after his conviction had become final. Mr. Simms apparently accepted the fact that the socks had been destroyed and unsuccessfully pursued other post-conviction relief for several years on the theory that the socks had been destroyed in bad faith.

This case arose when Mr. Simms sought to reopen the proceedings under CP §8-201 and obtain a hearing to explore the circumstances of the destruction of the socks. The *pro bono* counsel who had assisted him in the earlier proceedings under that statute moved to strike their appearance. The Circuit Court granted the motion to withdraw and denied Mr. Simms' request for new court-appointed counsel. The Circuit Court also turned down his request to conduct further proceedings under the post-conviction DNA testing statute.

For the reasons that follow, we affirm the rulings of the Circuit Court.

# I

## Background

We describe first the post-conviction DNA testing statute that is the basis for this proceeding and then the factual and procedural history of this particular case.

### A.    *The Post-Conviction DNA Testing Statute*

In 2001, the General Assembly enacted the post-conviction DNA testing statute to provide a mechanism for a person who has been convicted of certain serious crimes to obtain exculpatory or mitigating evidence through DNA testing of items related to that conviction.  Chapter 418, Laws of Maryland 2001, *codified as later amended at* CP §8-201; *see Thompson v. State*, 395 Md. 240, 252-53, 909 A.2d 1035 (2006).  In 2009, this Court adopted rules to govern proceedings under the statute. Maryland Rules 4-701 *et seq.*

*Petition, Answer, and Court Action*

Under the statute, a convicted person may ask a circuit court to order testing of "scientific identification evidence" – that is, evidence in the possession of the State related to the individual's prosecution that contains biological evidence in which there may be DNA.    *See* CP §8-201(b)(1)[1]; CP §8-201(a)(5) (definition of "scientific

---

[1] In particular, the statute provides:

(b) Notwithstanding any other law governing postconviction relief, a person who is convicted of [certain crimes] may file a petition:

   (1) for DNA testing of scientific identification evidence that the State possesses … that is related to the judgment of conviction; or

2

identification evidence"); Maryland Rules 4-703, 4-704.   The petition may also seek to have a law enforcement agency search a data base or log to identify the source of physical evidence used for DNA testing.   CP §8-201(b)(2).

A copy of the petition is to be provided to the State.   CP §8-201(e); Maryland Rule 4-705.   The State is to file an answer to the petition that states, among other things, the existence, location, and amenability to testing of the evidence specified in the petition.   Maryland Rule 4-706(c).   If the evidence is missing or has been destroyed, the State is to provide certain details as to its search or the circumstances of the destruction.   *Id.*   The petitioner may then file a response to the State's answer contesting the accuracy or the adequacy of the State's answer, and requesting a search of other databases or logs.   Maryland Rule 4-708.

Upon consideration of the filings, the Court may dismiss the petition in certain circumstances.   Maryland Rule 4-707(a).   If it does not dismiss the petition, it may appoint counsel for an indigent petitioner.   Maryland Rule 4-707(b); *Fuster v. State*, 437 Md. 653, 668, 89 A.3d 1114 (2014).   In certain circumstances, the court must hold a hearing on the petition.   Maryland Rule 4-709.[2]

---

(2) for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing.

CP §8-201(b).

[2] Maryland Rule 4-709(a) provides, in pertinent part:

**(a)    When required**.   Except as otherwise provided in subsection (b)(2) of this Rule, the court shall hold a hearing if, from the petition, answer, and any response, the court finds that the petitioner

3

The court is to order DNA testing of the physical evidence if the State agrees to the testing.  Maryland Rule 4-710(a)(2)(A)(i).  The court is also to order testing if it finds:

> (i)    a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and
>
> (ii)   the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

---

has standing to file the petition and the petition is filed in the appropriate court, and finds one of the following:

(1)    specific scientific identification evidence exists or may exist that is related to the judgment of conviction, a method of DNA testing of the evidence may exist that is generally accepted within the relevant scientific community, and there is or may be a reasonable probability that the testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing;

(2)    if the State contends that it has been unable to locate the evidence, there is a genuine dispute as to whether the State's search was adequate;

(3)    if the State contends that the evidence existed or may have existed but was destroyed, there is a genuine dispute whether the destruction was in conformance with any relevant governing protocols or was otherwise lawful.

(4)    the State is unable to produce scientific evidence that the State was required to preserve pursuant to Code, Criminal Procedure Article, §8-201(i)(1); or

(5)    there is some other genuine dispute as to whether DNA testing or a DNA database or log search by a law enforcement agency should be ordered.

CP §8-201(d)(1); *see also* Maryland Rule 4-710(a)(2)(A)(ii). In addition, the court is to order a database search by a law enforcement agency if the court finds that "a reasonable probability exists that the database search will produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing." CP §8-201(d)(2).[3] The court is also to deny the petition if it concludes that there is no reasonable probability that DNA testing has the potential to produce exculpatory or mitigating evidence. Maryland Rule 4-710(a)(1)(B).[4]

*Resolving the Adequacy of the State's Search*

If the State has been unable to locate the evidence and there is a genuine dispute at to the adequacy of its search, the court must conduct a hearing. Maryland Rule 4-709(a)(2). Similarly, a hearing must be conducted if the evidence was

---

[3] We note that paragraph (2) of subsection (d) – along with the related paragraph (2) of subsection (b) – was added to the statute shortly after Mr. Simms filed the petition that is the basis of this action. Chapter 337, Laws of Maryland 2008. To the extent that paragraph (2) may be pertinent to this case, we note that this Court has previously held that a provision of the DNA testing statute concerning the conditions for requiring testing may be applied retroactively in light of the procedural and remedial nature of the statute. *See Gregg v. State*, 409 Md. 698, 714-16, 976 A.2d 999 (2009).

We also note that the Legislature amended the statute during the pendency of this appeal, largely to expand the class of persons who may file a petition for DNA testing by adding other offenses to the list of qualifying convictions. Chapter 396, Laws of Maryland 2015. As Mr. Simms was already eligible to file a petition under the prior version of the statute, the 2015 amendment has no bearing on this case.

[4] The court is also to deny the petition if the proposed method of testing is not generally accepted in the scientific community. Maryland Rule 4-710(a)(1)(B). There does not appear to be any issue in this case concerning the proposed method of testing.

5

destroyed and there is a genuine dispute over the lawfulness of the destruction. Maryland Rule 4-709(a)(3).

If the petitioner challenges the adequacy of the State's search, the State has the burden of establishing that it conducted a reasonable search for the evidence. If the State is unable to locate the evidence, it is to submit a detailed affidavit concerning its search for the evidence. Maryland Rule 4-706(c)(2)(B).

If the evidence has been destroyed, the State is to submit an affidavit containing a description of relevant protocols and legal requirements, stating whether the destruction complied with those requirements, and documenting the destruction. Maryland Rule 4-706(c)(2)(C); s*ee also Arey v. State*, 400 Md. 491, 503-4, 929 A.2d 501 (2007) ("Because the State was the custodian of evidence, the State needs to check any place the evidence could reasonably be found, *unless there is a written record that the evidence had been destroyed in accordance with then existing protocol*.") (emphasis added). The State must make "a *prima facie* case, either directly or circumstantially, that the requested scientific identification evidence no longer exists…." *Washington v. State*, 424 Md. 632, 651, 37 A.3d 932 (2012); *Johnson v. State*, 440 Md. 559, 568, 103 A.3d 650 (2014). If the State establishes that it has conducted a reasonable search, either by documenting the destruction of the evidence or by demonstrating that a diligent search has proved fruitless, the State has satisfied its burden of persuasion. *Arey*, 400 Md. at 505.

If the court finds that the State has conducted an adequate search and that the evidence sought to be tested is not within its possession and was not "intentionally

6

and willfully destroyed," the court is to deny the petition. Maryland Rule 4-710(a)(1)(A).

*State's Obligation to Preserve Evidence*

The statute requires the State to preserve scientific identification evidence that may be subject to testing under the statute for a defined period of time and creates procedures for the earlier disposal of such evidence. CP §8-201(j), (k)(1)-(4). If evidence that should have been preserved is unavailable as a result of "intentional and willful destruction," the court is to infer that testing would have been favorable to the petitioner. CP §8-201(j)(3)(ii); Maryland Rule 4-710(a)(3).

The State's preservation obligation is not retroactive – *i.e.*, it applies only to evidence in possession of the State on or after October 1, 2001, the date the statute became effective. *Washington*, 424 Md. at 666-67; Chapter 418, §§2, 3, Laws of Maryland 2001.

*Post-Testing Actions*

If the court orders DNA testing, depending on the results of the test, the court will either dismiss the petition, open post-conviction proceedings, or order a new trial. CP §8-201(i); Maryland Rule 4-711.

*Other Provisions*

Other provisions of the statute concern the timing of the testing and the allocation of the costs of testing. CP §8-201(g),(h). An appeal from an order issued in a proceeding under the post-conviction DNA testing statute is taken directly to this Court. CP §8-201(k)(6).

7

## B.  *Factual and Procedural History*

### 1.  *Trial, Sentencing, Appeal, and Post-Conviction Petition*

On the morning of December 13, 1995, the bodies of Mr. Simms' former girlfriend, Belinda Baynor, and Peter W. Williams were discovered inside Mr. Williams' house.[5]  Both victims had died from stab wounds.  Law enforcement officers found Mr. Simms at the crime scene.  They took Mr. Simms to the police station for questioning.  At the police station, Mr. Simms admitted that he had visited the Williams residence the prior evening and had quarreled with Ms. Baynor.  He also admitted to a prior altercation with Mr. Williams.  The police tested the hair on Mr. Simms' hand, as well as his right hand, for the presence of blood.  Both tests yielded positive results.  Mr. Simms was charged with the murders of Ms. Baynor and Mr. Williams and additional weapons-related offenses.

At trial, the State introduced into evidence several articles of clothing – including a jacket, boots, socks, and a towel – that had been found in a trash bag close to the home of Mr. Simms' aunt.  The aunt testified that she observed Mr. Simms acting nervously and wearing those clothes in the early morning hours of December 13, 1995.  The State also presented expert testimony that the clothing had blood stains with DNA profiles that matched those of Mr. Williams and Ms. Baynor.

---

[5] This summary is derived in part from the recent decision by the Court of Special Appeals concerning its disposition of a petition for a writ of *habeas corpus* filed by Mr. Simms.  *Simms v. Shearin*, 221 Md. App. 460, 463-64, 109 A.3d 1215 (2015).

On April 6, 1998, the jury convicted Mr. Simms of two counts of first degree murder and two counts of weapons-related offenses. He was sentenced to two consecutive sentences of life imprisonment without the possibility of parole. Mr. Simms appealed. The Court of Special Appeals affirmed the convictions in an unreported opinion in 1999. Mr. Simms subsequently sought post-conviction relief, basing his petition on a long list of contentions concerning alleged prosecutorial misconduct and ineffective assistance of counsel. His post-conviction petition was denied by the Circuit Court in a thorough opinion filed in June 2001 addressing each of his issues.[6]

2.    *Petition for DNA Testing*

On January 7, 2008, Mr. Simms filed a *pro se* petition for relief pursuant to CP §8-201. He alleged that a more sophisticated DNA test[7] of the clothes found in a trash bag near his aunt's home that the State introduced into evidence at trial would establish that he had never worn those clothes. Mr. Simms alleged that he has dry

---

[6] The Court of Special Appeals denied his application for leave to appeal the Circuit Court's decision. The Circuit Court later denied his motion to reopen the post-conviction proceeding.

[7] In his petition, Mr. Simms alleged that the State had conducted DNA testing under the restriction fragment length polymorphism (RFLP) method with inconclusive results. According to a copy of a police lab report attached to the petition, the State had also conducted DNA testing by the polymerase chain reaction (PCR) method. Based on the PCR test, the analyst concluded that the blood stain on the jacket matched Ms. Baynor's DNA profile. Mr. Simms asserted that DNA testing by the STR (short tandem repeats) method would support his contention that he was innocent, presumably by showing that someone else – or at least not Mr. Simms – had worn the socks found in the trash bag.

peeling skin on his lower legs as a result of a degenerative skin condition (relying on a prison medical record that described him as having that condition in 2007) and that, as a result, some of his epithelial cells would be found on the socks if he had worn them at the time of the murders in 1995. He sought a DNA test to prove that the socks from the trash bag did not contain any of his epithelial cells. In the petition, he also asked the court to appoint counsel for him.

The Circuit Court summarily denied Mr. Simms' petition without requiring the State to respond. Mr. Simms appealed to this Court, which held that his *pro se* petition, when liberally construed, presented a *prima facie* case for DNA testing and therefore should not have been denied summarily. *Simms v. State*, 409 Md. 722, 733, 976 A.2d 1012 (2009). The Court remanded the case to the Circuit Court with directions to require the State to respond to the petition, to allow Mr. Simms' attorney[8] to reply to the State's response, and to hold a hearing if necessary to resolve any disputes material to the disposition of the petition. The Court cautioned that it was *not* directing the Circuit Court to grant the relief sought in the petition. 409 Md. at 734.

On remand, at the request of the Public Defender, *pro bono* attorneys from the University of Baltimore School of Law Innocence Project Clinic – Michele Nethercott, the clinic's director, and Justin Esworthy – represented Mr. Simms in his quest for DNA testing. The State apparently did not oppose DNA testing of the socks. On July

_____

[8] The Court noted in its opinion that the Public Defender, which had represented Mr. Simms in the appeal, had agreed to represent him on the remand.

16, 2010, the Circuit Court held a brief hearing. At the hearing, the Assistant State's Attorney advised that the socks themselves had been destroyed, but that "cuttings" from the socks that still existed were being made available for the DNA testing requested by Mr. Simms. Appearing on behalf of Mr. Simms, Mr. Esworthy advised the Circuit Court that the lab was not expected to have results for approximately two months. The Circuit Court directed Mr. Esworthy to provide a status report and to request a further hearing upon receipt of the lab results.

On March 3, 2011, the State filed an affidavit by Sgt. Larry Bazzle, the custodian of records for the Evidence Control Unit of the Baltimore Police Department. In the affidavit, Sgt. Bazzle stated that he had determined from a review of the unit's records that the socks recovered from the trash bag had been destroyed on October 23, 2000, along with the other evidence obtained from the trash bags, in accordance with the existing protocols of the unit. Attached to the affidavit was supporting documentation, including a copy of the police report concerning seizure of the evidence, a property sheet listing the evidence obtained from the bags, chain of custody reports concerning those items and recording their destruction, and a report listing the status of various items of evidence.

Shortly thereafter, on March 15, 2011, Mr. Esworthy sent a status report to the Circuit Court. He informed the court that it had been determined that the cuttings that had been sent to the lab were not from the socks that Mr. Simms sought

to have tested.[9]  He stated that a further search had determined that the correct pair of socks had been destroyed on October 23, 2000, after Mr. Simms' conviction had been affirmed on direct appeal, and referenced Sgt. Bazzle's affidavit.  In light of this development, Mr. Esworthy explained that "we will not be pursuing any further action on behalf of Mr. Simms at this time."  Mr. Esworthy also informed Mr. Simms of the destruction of the socks and his view that there was nothing more to be done in the case under the post-conviction DNA testing statute.[10]  Mr. Simms did not take any action then – or for the next two and a half years – to question the fact that the particular evidence he sought to have tested no longer existed.

An outside observer might well have concluded that the proceeding under the post-conviction DNA testing statute was over.  The Circuit Court apparently did.  On September 28, 2011, it closed the case.

*3.    Habeas Corpus Petition Based on Destruction of Socks*

While he did not pursue further action in the proceeding under CP §8-201, Mr. Simms did institute a separate action seeking relief based on the destruction of the socks.  On August 1, 2011, he filed a *pro se* petition in the Circuit Court for a writ of

---

[9] The letter does not elaborate on how it was determined that the cuttings came from the incorrect pair of socks.

[10] Mr. Esworthy's communication with Mr. Simms does not appear in the record of this case, although there appears to be no dispute that Mr. Esworthy notified Mr. Simms at that time.  The letter is referenced in the opinion of the Court of Special Appeals in his appeal of the denial of his habeas corpus petition. *Simms v. Shearin*, 221 Md. App. 460, 465, 109 A.3d 1215 (2015).  In addition, Mr. Simms stated, in the motion he later filed for further relief under the post-conviction DNA testing statute, that he had received such a communication on March 16, 2011.

12

*habeas corpus*. In that petition, he asserted that he was denied due process and equal protection when the State destroyed the evidence that had been admitted at trial. He also asserted that the State should have notified him when it destroyed the evidence. The State responded to that petition. The Circuit Court ultimately denied the petition in October 2012, holding that Mr. Simms failed to show that the State had acted in bad faith when it destroyed the socks.

Mr. Simms, represented by the Public Defender, appealed the Circuit Court's decision. The Court of Special Appeals dismissed the appeal. *Simms v. Shearin*, 221 Md. 460, 479, 109 A.3d 1215 (2015).[11]

*4. Motion for Further Relief under the Post-Conviction DNA Testing Statute*

On December 23, 2013, more than a year after the Circuit Court had denied relief to Mr. Simms with respect to his allegation that the State had improperly destroyed the socks, Mr. Simms seemingly reversed course and questioned whether the socks had been destroyed on the date set forth in the Bazzle affidavit. He renewed his request for relief under the post-conviction DNA testing statute by a *pro se* "Petitioners [sic] Motion for Appropriate Relief Under DNA Postconviction State Section 8-201(c)(i)." In that document, he argued that the Bazzle affidavit, which had been filed two years earlier, was insufficient by itself to establish when the socks had been destroyed or that the socks did not exist. He asked the Circuit Court to hold a hearing and to appoint counsel for him.

---

[11] The intermediate appellate court held that Mr. Simms' only avenue of appeal from the Circuit Court ruling would be under the Uniform Postconviction Procedure Act (UPPA), CP §7-101 *et seq.,* but that the UPPA did not authorize his appeal.

The Circuit Court reopened the proceeding under CP §8-201 and issued a scheduling order. Although Mr. Simms had asked for appointment of counsel, the court appeared to assume that the Innocence Project attorneys continued to represent him, copying them on the scheduling order. Soon thereafter, Ms. Nethercott informed Mr. Simms that she intended to withdraw the appearance of the Innocence Project attorneys, and filed a motion to that effect.[12]

On May 14, 2014, the Circuit Court held a hearing to address the motion to withdraw the appearance of the Innocence Project attorneys, Mr. Simms' request for appointment of counsel, and Mr. Simms' motion for relief under CP §8-201. The Circuit Court first granted the motion to withdraw the appearance of the Innocence Project attorneys and denied Mr. Simms' motion for appointment of new counsel. The Court then considered the merits of Mr. Simms' request for relief under CP §8-201.

---

[12] The introductory portion of the motion literally sought to withdraw the appearance of "University of Baltimore Innocence Project" – an entity that technically could not enter an appearance, as only properly qualified attorneys may represent a party. *See* Maryland Rules 1-311, 1-312, 2-131, *cf. Gonzales v. State*, 408 Md. 515, 536-37 & n. 12, 970 A.2d 908 (2009) ("individuals rather than law firms appear on behalf of parties"). The Circuit Court properly treated it as a motion to withdraw the appearance of the attorneys associated with the Innocence Project – Ms. Nethercott and Mr. Esworthy.

The motion also purported to be filed under Maryland Rule 4-214(d) – a rule governing withdrawal of counsel in criminal cases. As explained later in the text, Maryland Rule 2-132 is likely the more applicable rule, given that the proceeding is civil in nature. Moreover, it is arguable that there was no need to withdraw the appearance of counsel, given the automatic termination provision of Maryland Rule 2-132(d). *See* Part II.A. of this opinion below.

Mr. Simms argued that the State had destroyed the evidence without providing him with 120 days' notice, as now required by CP §8-201(k)(2). The Assistant State's Attorney responded that the evidence had been destroyed in 2000, pursuant to the then-current practice after the conviction had become final and before the passage or effective date of the 2001 legislation that enacted the post-conviction DNA testing statute with its preservation and notification obligations. In response, Mr. Simms argued that the statutory preservation and notification obligations should be treated as retroactive. He also asserted that he should have been given an opportunity to cross-examine Sgt. Bazzle as to the extent of the State's search for the evidence. Consistent with the allegations in his *habeas corpus* motion, at the hearing on his renewed petition under CP §8-201, Mr. Simms did not dispute that the evidence had been destroyed. Rather, he argued that the socks had been destroyed in bad faith. The Circuit Court took the motion under advisement.

Three weeks later, the Circuit Court rendered its decision in a memorandum opinion dated June 3, 2014. Consistent with this Court's approach in Mr. Simms' prior appeal under the post-conviction DNA testing statute, the Circuit Court construed his *pro* se motion liberally. But, even giving his renewed petition a liberal reading, the court found that he was not entitled to the relief that he sought.

In its opinion, the Circuit Court held that the State had made an adequate search for scientific identification evidence, that there was "no reasonable probability" that a further search would produce relevant evidence, and that the relief sought by Mr. Simms had already been fully granted. With respect to Mr. Simms'

assertion that the State failed to preserve evidence in compliance with the statute, the court noted in a footnote that the statutory obligation to preserve such evidence was not effective at the time of the destruction of the evidence sought by Mr. Simms.

Mr. Simms appealed that decision directly to this Court. His *pro se* notice of appeal, filed July 1, 2014, appeared to raise, as its primary argument, the question whether the socks had actually been destroyed. It also reiterated his contention – made in his *habeas corpus* petition and at the hearing on his motion under CP §8-201 – that the evidence had been destroyed in bad faith. Before us, Mr. Simms was represented by able and experienced *pro bono* counsel.

## II

## Discussion

In this appeal we must decide the following questions:

1 - Did the Circuit Court abuse its discretion when it granted the motion of the Innocence Project counsel to strike their appearance?

2 - Did the Circuit Court abuse its discretion when it declined to appoint new counsel for Mr. Simms?

3 - Was the Circuit Court clearly erroneous when it declined to order relief under CP §8-201?

The answer to all of these questions is "no."

### A.    *Motion to Strike Appearance*

At the outset, there is some confusion as to what rule and standards govern a motion by counsel to withdraw from representation of a petitioner in a proceeding under CP §8-201.  Like other post-conviction proceedings, it has a hybrid nature.  On the one hand, courts frequently refer to post-conviction proceedings as "separate and distinct civil procedure[s])."  *E.g.*, *Ruby v. State*, 353 Md. 100, 107, 724 A.2d 673 (1999).  Yet some of the rules governing such proceedings, including the rules governing proceedings under the post-conviction DNA testing statute, are codified in a title of the Maryland Rules called "Criminal Causes."  *See* Maryland Rules, Title 4, Chapters 400, 700.[13]  *Cf.  Harris v. Nelson*, 394 U.S. 286, 293-94 (1969) (although *habeas corpus* proceedings are characterized as "civil," the label is "gross and inexact" as such a proceeding is essentially "unique.")

The Motion to Strike Appearance filed by the Innocence Project counsel was purported to be made under Rule 4-214(d),[14] a rule governing withdrawal of a defense

---

[13] Rules concerning *habeas corpus* and *coram nobis* – the post-conviction remedies with Latin names – appear in the Special Proceedings title.  *See* Maryland Rules, Title 15, Chapters 300, 1200.

[14]  The rule provides:

> (d)    **Striking appearance.**    A motion to withdraw the appearance of counsel shall be made in writing or in the presence of the defendant in open court.  If the motion is in writing, moving counsel shall certify that a written notice of intention to withdraw appearance was sent to the defendant at least ten days before the filing of the motion….    If no other counsel has entered an appearance for the defendant, leave to withdraw may be granted only by order of court.  The court may refuse to leave to withdraw an appearance if it would unduly delay the trial of the action, would be prejudicial to any of the parties,

counsel in a criminal case. That rule requires an oral motion in the presence of "the defendant," or a written motion served on "the defendant" at least 10 days before the filing of the motion. If no other attorney is entering an appearance to replace the departing defense attorney, the motion to withdraw the attorney's appearance may be accomplished only by court order and the court must then conduct proceedings under Rule 4-215 governing unrepresented criminal defendants. The court may refuse to permit withdrawal if it would unduly delay trial, would be prejudicial to a party, or otherwise would not be in the interest of justice. The safeguards in this rule are obviously designed to vindicate a criminal defendant's constitutional right to counsel – a right not implicated in a post-conviction proceeding.

A better fit is Maryland Rule 2-132, which governs a motion to strike an attorney's appearance in a civil case. That rule allows for withdrawal by a simple notice if the client has another attorney of record. Rule 2-132(a). In a situation like the instant case, where a substitute attorney is not entering an appearance, the departing attorney must file a motion. Rule 2-132(b).[15] If the motion is not

---

or otherwise would not be in the interest of justice. If leave is granted and the defendant is not represented, a subpoena or other writ shall be issued and served on the defendant for an appearance before the court for proceedings pursuant to Rule 4-215.

[15] At the time, the Innocence Project counsel asked to withdraw their appearance, Rule 2-132(b) provided:

(b) **By motion.** When the client has no other attorney of record, an attorney wishing to withdraw an appearance shall file a motion to withdraw. Except when the motion is made in open court, the motion shall be accompanied by the client's written consent to the withdrawal or the moving attorney's certificate that notice has been mailed to the

accompanied by the client's written consent, the withdrawing attorney must provide the client with notice at least five days advance notice of the filing of the motion and advise the client to have another attorney enter an appearance or to notify the clerk that the client intends to proceed *pro se*. After the attorney submits the motion, the court may deny the motion if the withdrawal would cause undue delay, prejudice, or injustice. The rule also provides for the automatic withdrawal of an attorney's appearance in a case when no appeal is taken from a final judgment in the case. Rule 2-132(d).

Although the attorneys from the Innocence Project formally filed their motion under Rule 4-214(d), we assess the disposition of that motion under Rule 2-132. A circuit court's decision to grant a motion to withdraw is reviewed under an abuse of discretion standard. *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 554, 60 A.3d 475 (2013). "An abuse of discretion occurs 'where no reasonable person would take the view adopted by the court' or if the court acts 'without reference to any guiding rules or principles.'" *Id.* (quoting *North v. North*, 102 Md. App. 1, 13, 648 A.2d 1025 (1994).

---

client at least five days prior to the filing of the motion, informing the client of the attorney's intention to move for withdrawal and advising the client to have another attorney enter an appearance or to notify the clerk in writing of the client's intention to proceed in proper person. Unless the motion is granted in open court, the court may not order the appearance stricken before the expiration of the time prescribed by in Rule 2-311 for responding. The court may deny the motion if withdrawal of the appearance would cause undue delay, prejudice, or injustice.

The rule was amended slightly in 2015 to take account of a simultaneous amendment to Rule 2-131(b) that allows for an attorney to enter a limited appearance under certain conditions.

In our view, the Circuit Court did not abuse its discretion when it granted the motion of the Innocence Project counsel to withdraw their appearance. Everyone, including Mr. Simms, appears to have treated the determination, in early 2011, that the socks and other items recovered from the trash bag had been destroyed as the conclusion of the proceeding under CP §8-201. Had that conclusion been embodied in a court order at the time, the appearance of the Innocence Project attorneys would have automatically terminated under Rule 2-132(d). Indeed, in his "Motion for Appropriate Relief" to reopen the proceedings under CP §8-201 filed two and a half years later, Mr. Simms appeared to believe he was unrepresented as he requested appointment of counsel.

When it became apparent that the court was under the impression that the Innocence Project attorneys still represented Mr. Simms, counsel sought to withdraw their appearance in a way that complied with the procedural requirements of Rule 2-132(b). They filed a motion to withdraw their appearance. They advised Mr. Simms in writing a month in advance of filing the motion of their intentions. That motion recounted the history of their representation of Mr. Simms, including the fact that they had advised Mr. Simms more than two and a half years earlier that they would not pursue further relief under the post-conviction DNA testing statute on his behalf.

The main proposition that Mr. Simms sought to pursue in his "Motion for Appropriate Relief" – whether the State had destroyed the evidence in violation of the later-enacted post-conviction DNA testing statute – was not the issue for which counsel had originally been appointed and was at odds with their representation to

20

the court that they would not be seeking further relief under the post-conviction DNA testing statute. At the hearing, the Circuit Court noted the representation by the Innocence Project counsel that the issue for which they had been appointed had been resolved. It was well within the discretion of the Circuit Court to conclude that the granting of the motion would not cause undue delay, prejudice, or injustice.

Mr. Simms does not identify any particular prejudice that he suffered as a result of the withdrawal of the Innocence Project attorneys. As noted above, they had not filed the motion he was seeking to litigate. At most, he suggests that either Ms. Nethercott or Mr. Esworthy may have known the location of other items available for testing. That speculation, again, is contradicted by their representations to the Circuit Court and Mr. Simms that further efforts under the CP §8-201 would not be fruitful.

In sum, the hearing judge did not abuse his discretion when he granted the motion of *pro bono* counsel to withdraw.

### B.    *Motion to Appoint Counsel*

Maryland Rule 4-707(b) governs appointment of counsel in proceedings under the post-conviction DNA testing statute. That rule provides as follows:

> **Appointment of Counsel**. If the court finds that a petitioner who has requested the appointment of counsel is indigent, the court shall appoint counsel within 30 days after the State has filed its answer unless (1) the court denies the petition as a matter of law or (2) counsel has already filed an appearance to represent the petitioner

Maryland Rule 4-707(b). Although this rule uses the phrase "shall appoint," this Court has held that a circuit court's decision whether to appoint counsel is discretionary. *Fuster*, 437 Md. at 664-69.[16]

Mr. Simms argues that this Court's holding in *Fuster* is inapplicable to his case because, unlike the petitioner in *Fuster*, he requested appointment of counsel in his petition. He further argues that because the Circuit Court did not immediately deny his renewed petition as a matter of law, he was entitled to appointment of counsel under Rule 4-707(b).

While it is true that the petitioner in *Fuster* did not request counsel, a circuit court's exercise of discretion is not controlled by whether a petitioner makes a request. The evident purpose of the provision for appointment of counsel is to provide a petitioner with the means to develop facts and legal arguments to support a petition for testing when the petition clears certain hurdles and the involvement of counsel would be beneficial to the petitioner and the court in resolving issues raised by the petition. In our view, the Circuit Court retained discretion to decline to appoint new counsel for Mr. Simms even though he had made a request.

Here, the Circuit Court was faced with a petitioner who had already had the benefit of well-qualified and experienced counsel in pursuing DNA testing of a specific item of evidence – evidence that the State had established, to the satisfaction of that

---

[16] This Court recently amended Rule 4-707(b), effective January 1, 2016, to substitute "may" for "shall" in conformity with the holding in *Fuster*. *See* Rules Order (November 19, 2015) relating to the 188th Report of the Standing Committee of Rules of Practice and Procedure.

counsel and Mr. Simms (at least for some period of time), no longer existed. Moreover, when Mr. Simms changed course before the Circuit Court to question the legality and timing of the destruction of the evidence, he suggested no basis for contradicting the detailed documentation provided by the State. A circuit court is not required to second-guess counsel or to indulge every speculation a petitioner might wish to pursue. The Circuit Court did not abuse its discretion in concluding that it should not deploy the limited resources available for petitioners in DNA testing cases to retread ground that had already been covered or to pursue a legally-doomed theory.

## C. Whether Mr. Simms Was Entitled to Further Relief Under CP §8-201

In its memorandum opinion, the Circuit Court noted that Mr. Simms, through counsel, had conceded in early 2011 that the socks in question had been destroyed and that he had not subsequently suggested any basis for questioning the detailed documentation attached to the Bazzle affidavit. Accordingly, the court concluded that there was no factual basis for finding a possibility, much less a reasonable probability, that further efforts under the post-conviction DNA testing statute would yield exculpatory or mitigating evidence. The Circuit Court also held that Mr. Simms had failed to demonstrate a reasonable probability that a further search of the law enforcement database would yield potentially mitigating or exculpatory evidence.

This Court reviews a circuit court's reasonableness determination under the post-conviction DNA testing statute according to a "clearly erroneous" standard. *Johnson*, 440 Md. at 570; *Washington*, 424 Md. at 651; *Blake v. State*, 418 Md. 445, 460, 15 A.3d 787 (2011). Under this standard, "if there is any competent evidence to

23

support the factual findings below, those findings cannot be held to be clearly erroneous." *Washington*, 424 Md. at 651 (brackets omitted) (quoting *Solomon v. Solomon*, 383 Md. 176, 202, 857 A.2d 1109 (2004)).

Mr. Simms argues that the Circuit Court should have conducted further proceedings under CP §8-201 to allow him to explore whether the socks had in fact been destroyed or might still be available for testing.[17]  As the Circuit Court noted, Mr. Simms had already had ample opportunity to question whether they still existed years earlier in the proceeding.  This was not a case where a court ruled on the basis of a last minute affidavit to which the petitioner had no opportunity to respond.  *See Arey,* 422 Md. at 335-36.  Indeed, in his "Motion for Appropriate Relief" under CP §8-201, Mr. Simms did not appear to question that the socks had been destroyed, but asked for a hearing to explore the *timing* of their destruction – presumably in the hope that he could show that the destruction actually occurred after the effective date of the statute requiring the State to preserve scientific identification evidence or that it had otherwise been done in bad faith.  It was only in his brief to this Court that Mr. Simms asserted that some evidence may yet exist – a position that contradicted his

_____

[17] On appeal, Mr. Simms also complains for the first time that the 2011 Bazzle affidavit did not include the general protocols for the maintenance and disposition of evidence.  Although the attachments to the Bazzle affidavit provided detailed documentation of the seizure, chain of custody, and destruction of the various items of clothing found in the trash bag – as well as an affirmation that the destruction occurred pursuant to applicable protocols – the protocols themselves, which would have pre-existed the post-conviction DNA testing statute, were not attached.  While it would be the better practice, and more compliant with the rules, to include copies of any such protocols, their absence does not diminish the weight of the documentation that was submitted.  Moreover, no objection was ever raised to the absence of those documents in the Circuit Court.

attorney's status letter to the court in March 2011, his *pro* se petition for *habeas corpus* relief filed in August 2011, and his own statements at the May 2014 hearing. Mr. Simms alleged no facts to support either of his more recent suspicions.

The Circuit Court was not obliged to conduct a fishing expedition to indulge every permutation that Mr. Simms might imagine. *Johnson*, 440 Md. at 571-72, (speculation is not sufficient to overcome a *prima facie* showing by the State). Here, he had received the assistance of very qualified counsel who determined that the evidence in question was no longer available for testing. Even had the evidence been located and been available for testing, it would not have conclusively established Mr. Simms' innocence. Mr. Simms' theory was that a sophisticated DNA test of the socks would reveal an absence of his skin cells. This would only be significant if he could also show that he had the same skin condition in 1995 as reported in his prison medical form in 2007 and that the skin condition would necessarily result in his DNA on the socks. At best, this might be evidence to question his aunt's testimony that he had been wearing various items of clothing on the day of the murders. It would hardly be exculpatory – this was not an instance where DNA testing of a rape kit might exonerate the individual convicted of the crime.

The Circuit Court concluded that the Bazzle affidavit, the supporting documentation of the chain of custody and destruction of the evidence, and Mr. Simms' admission that the State destroyed the evidence, all indicated that a further search would not produce relevant evidence with reasonable probability. Given the

25

affirmative and unrebutted evidence that the socks had been destroyed, the Circuit Court's conclusion was not clearly erroneous.

## III

## Conclusion

For the reasons explained above, we hold:

1.      The Circuit Court did not abuse its discretion when it granted the motion of the Innocence Project attorneys to withdraw their appearance.

2.      The Circuit Court did not abuse its discretion when it declined to appoint new counsel for Mr. Simms.

3.      The Circuit Court was not clearly erroneous when it declined to conduct further proceedings or to award relief under CP §8-201.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**